UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MOXIE OWL, INC. d/b/a THE YARD:
HATCHET HOUSE & BAR,

                           Plaintiff,

             -against-

ANDREW CUOMO, in his official capacity as the
Governor of the State of New York, VINCENT G.
BRADLEY, in his official capacity as the Chairman
of the New York State Liquor Authority, LILY M.
FAN and GREELEY T. FORD, in their official
capacities as the Commissioners of the New York
State Liquor Authority,

                         Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action No.: 1:21-cv-194 (MAD/DJS)

Plaintiff MOXIE OWL, INC. d/b/a THE YARD: HATCHET HOUSE & BAR, by and

through her attorneys, E. STEWART JONES HACKER MURPHY LLP, complaining of

Defendants, ANDREW CUOMO, in his official capacity as Governor of the State of New York,

VINCENT G. BRADLEY, in his official capacity as the Chairman of the New York State Liquor

Authority, LILY M. FAN and GREELEY T. FORD, in their official capacities as the

Commissioners of the New York State Liquor Authority, alleges as follows:

## THE NATURE OF THIS ACTION AND FACTS OF THE CASE

1.      Plaintiff seeks redress against Defendants due to the imposition and enforcement

of unconstitutional prohibition against serving alcohol at axe-throwing establishments in violation

of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution

and the Article I, Section 11, of the New York State Constitution.

## THE PARTIES

### I.    The Plaintiff

2.       Plaintiff Moxie Owl, Inc., d/b/a The Yard: Hatchet House & Bar (hereinafter "The Yard") is an axe throwing venue and establishment serving food and alcohol in Albany, New York.

### II.    The Defendants

3.       Defendant Andrew Cuomo is the Governor of the State of New York and is sued in his official capacity.  He has acted under color of law at all relevant times.  His official place of business is the New York State Capitol Building in Albany, New York.

4.       Defendant Vincent G. Bradley is the Chairman of the New York State Liquor Authority and is sued in his official capacity.  He has acted under color of law at all relevant times. His official place of business is the New York State Liquor Authority, which is located at 80 South Swan Street, Ste. 900, in the City of Albany, New York.

5.       Defendant Bradley is responsible for and directs the actions of all subordinate employees and agents of the New York State Liquor Authority.

6.       Defendants Lily M. Fan and Greeley T. Ford are Commissioners of the New York State Liquor Authority and are sued in their official capacity.  Their official place of business is the New York State Liquor Authority, which is located at 80 South Swan Street, Ste. 900, in the City of Albany, New York.

7.       Defendants Fan and Ford are responsible for and direct the actions of all subordinate employees and agents of the New York State Liquor Authority.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

9.      Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York.

## JURY DEMAND

10.      Plaintiff hereby demands a trial by jury of all triable issues in this matter.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11.      Over the past decade, axe throwing has exploded in popularity in the United States. Presently, there are hundreds of axe-throwing venues domestically including several chain franchises.  The International Axe Throwing Federation and the World Axe Throwing League promulgate rules governing the sport, and competitions are held nationally and internationally.

12.      As a result of the growing interest in the activity, in 2019 Plaintiff developed a plan to open The Yard at 16 Sheridan Avenue in Albany, New York, as an establishment to provide a venue for the sport of axe throwing, which would also be licensed and permitted to serve both alcoholic beverages and food.

13.      Plaintiff planned that a designated portion of the establishment would be permanently purposed for and dedicated solely to the sport of axe throwing. However, to be profitable and to enhance the popularity and attractiveness of the venue to potential patrons, Plaintiff always planned that the establishment would offer the sale of alcoholic beverages and food.

14.      In execution of the busines plan, Plaintiff spent approximately 18 months and approximately $30,000 applying for a permanent, on-premises liquor license for The Yard.

15.     Following a 500-foot hearing with the New York State Liquor Authority (hereinafter "SLA"), Plaintiff was issued a temporary 90-day on-premises liquor license by SLA on December 4, 2019.

16.     During the license application process, Plaintiff was required to and did communicate fully to the SLA the purpose of Plaintiff's establishment, including that it was an axe-throwing venue, at which she intended to offer the sale of alcohol and food.   See Exhibit "A," SLA 500-Foot Hearing Report.

17.     At the 500-Foot Hearing, Plaintiff made clear that The Yard was an axe-throwing establishment which, if granted an SLA license, would also serve alcohol, in areas of the premises adjacent to the designated axe-throwing portion of the premises.

18.     The axe-throwing portion of the premises at The Yard consists of four 12' x 15' axe-throwing cages, with each cage circumscribing an axe-throwing lane, with wooden targets at one end of each lane and a designated throwing area located at the other end, such that axe throwers, in turns, may throw axes from a set distance of 12 feet at a target at the opposite end of the lane.

19.     Patrons at Plaintiff's premises are not permitted to consume alcoholic beverages while in the axe-throwing lanes.

20.     Plaintiff's business plan required an SLA license in order to be successful; the accompanying sale of alcoholic beverages and food within the premises and adjacent to the designated axe-throwing lane areas was and is critical to Plaintiff's economic business model.

21.     As a result of the 500-Foot hearing, Plaintiff was issued a temporary on-premises liquor license for a 90-day term.

22.     On March 7, 2020, Defendant Cuomo declared a statewide emergency due to the outbreak of COVID-19 and, thereafter, on March 16, 2020, issued a series of executive orders which directed that "all places of public amusement, whether indoors or outdoors, including but not limited to . . . bowling alleys, family and children's attractions" close on March 19, 2020.

23.     Plaintiff had hosted a grand opening on Friday, March 13th, 2020 – just three days prior to the issuance of Defendant Cuomo's executive order requiring the aforementioned closure, which by its terms necessarily included Plaintiff.

24.     Plaintiff thereafter closed The Yard.

25.     Plaintiff is located in the Capital Region of New York, which entered Phase 2 of New York State's reopening plan in June 2020, at which time Plaintiff reopened for food and beverage service only.

26.     In late July 2020, the Capital Region entered Phase 4 of New York State's reopening plan, when Plaintiff resumed axe-throwing activities at The Yard.

27.     As of July 2020, plaintiff resumed all activities and was fully operational, subject to capacity restrictions promulgated by Defendant Cuomo.

28.     On August 20, 2020, Defendant Cuomo issued Executive Order 202.57, permitting bowling alleys to open on August 17, 2020.  Since that date, bowling alleys with SLA licenses in New York state have been permitted, consistent with capacity rules and the reopening-phase of the region in which they are each individually located, to offer both bowling and the sale of alcoholic beverages to their patrons.

29.     On September 4, 2020, Defendant Cuomo issued Executive Order No. 202.60, authorizing the reopening of facilities offering video lottery gaming or casino gaming on September 9, 2020, including the sale of alcoholic beverages to patrons.

30.     While Plaintiff awaited the issuance of the permanent SLA license, the passage of time necessitated that she seek repeated extensions of the initial temporary license, which she did, and which extensions were granted, up through the issuance of a permanent on-premises liquor license on November 24, 2020.

31.     Thereafter, on Saturday, December 18, 2020, SLA investigators visited The Yard for a standard spot inspection.  SLA inspectors informed Plaintiff that The Yard was compliant with all SLA guidelines and regulations, including compliance with all New York State Department of Health guidelines for operation of licensed premises during the COVID-19 pandemic.

32.     On Friday, February 12, 2021, SLA Investigator Robert Benedetto that SLA had received "a complaint" in late January 2021 that Plaintiff was permitting axe throwing, and notified Plaintiff that Governor Cuomo's executive orders prohibited "axe throwing at bars."

33.     Investigator Benedetto further threatened Plaintiff with substantial monetary fines and suspension of Plaintiff's liquor license she did not immediately cease operation of her axe throwing lanes at The Yard.

34.     Investigator Benedetto advised Plaintiff that other "axe throwing bars" in New York had surrendered their liquor licenses and food permits in order to continue offering axe throwing and implied that Plaintiff should surrender her SLA license.

35.     Thereafter, the SLA Counsel Gary Meyerhoff informed Plaintiff that it was not an SLA regulation per se but, rather, SLA's interpretation of Department of Health regulations that precluded plaintiff from offering axe-throwing at her establishment.

36.     Mr. Meyerhoff referred Plaintiff to a "Frequently Asked Questions" (hereinafter "FAQ") section of SLA's website as authority for the prohibition of activities as Plaintiff's premises. See Exhibit "B," Email reply from SLA General Counsel Gary Meyerhoff.

37.     The SLA's FAQ section of its website states the following:

Q: I am a licensee that offers on premises service in a Phase 2/3/4 region, can I have dancing or offer bar games such as darts, pool, or cornhole?

A: No, under the Department of Health interim guidance for outdoor dining and indoor dining, all persons who are not already seated (e.g., waiting for food, or waiting to be seated), should be encouraged to wait in their vehicle and/or leave the premises. Congregating other than persons seated at tables is not permissible. Patrons should be standing only for necessary reasons such as use of restrooms, entering, and exiting. See https://sla.ny.gov/phase3-guidelines-for-on-premises-licenses (last accessed February 19, 2021).

38.     The same FAQ also advises that, as concerns bowling alleys:

Q: I operate a bowling alley, can patrons/players walk to the bar/restaurant in the alley to get a drink or food?

A: No, patrons/players must remain seated except to enter/exit/bowl/use the restrooms.   All food and beverage service must be provided through servers. Patrons should not consume drink or food while standing.

Q: I operate a bowling alley, must patrons/players wear face coverings?

A: Yes, at all times other than when seated and consuming food and/or beverage. See Id.

39.     Plaintiff specifically asked for but was provided no guidance to resolve the contradiction inherent in these FAQs, i.e., how Plaintiff meaningfully differed in operation from a bowling alley or casino in terms of Department of Health regulations, but was provided none.

40.     Across New York State SLA has taken an inconsistent approach to axe-throwing establishments with SLA licenses.  It has permitted certain such establishments to continue operating without interruption, it has shut down some establishments completely, it has accepted

the surrender of licenses from certain establishments, and it has required the surrender of licenses from others.

41.    As to all enforcement actions concerning axe-throwing licensees, Defendants have acted at different times, without uniformity in approach or outcome.

42.    Meanwhile, Defendants have authorized and encouraged licensees who are bowling alleys to fully operate, since August 2020, including selling and serving alcoholic beverages and food.

43.    Further, defendant has authorized movie theaters, video lottery gaming, casino gaming, health clubs, museums, aquariums, gyms, fitness centers and other facilities to reopen.

44.    Defendants have permitted and encouraged casinos to sell alcoholic beverages to patrons, just like bowling alleys, since September 2020.

45.    There is no functional, meaningful difference between casinos, bowling alleys and axe throwing establishments, with regard to the inherent risk of the spread of COVID-19 or the level of precautions against such spread which may be taken by each type of establishment to reduce such risk, that would render bowling alleys and casinos less risky than Plaintiff's axe-throwing premises.

46.    Plaintiff's premises arguably pose less risk of COVID-19 transmission to patrons than the risk of transmission posed to patrons at bowling alleys and casinos. Axes are hard surfaces which may be and are completely sanitized by Plaintiff between usages by different patrons. The axe-throwing lanes are large enough to permit social distancing between patrons and groups of patrons at all times.

47.    Casinos, bowling alleys and axe-throwing establishments  are all facilities that are primarily purposed to offer an activity to patrons and which also sell alcohol and food.

48.     No executive order issued or enforced by Defendants, no regulation, rule or FAQ promulgated, referenced or enforced by Defendants, nor any other written requirement presently known to exist authored or authorized by Defendants specifically references or regulates axe-throwing or axe-throwing premises, whether licensed by the SLA or otherwise.

49.     Without justification, Defendants are prohibiting only axe-throwing licensees from operating while endorsing other types of establishments, which are in fact specifically referenced and mentioned in executive orders, regulations and FAQs promulgated and enforced by Defendants.

50.     Defendants are, without justification, arbitrarily and capriciously picking pandemic economic winners and losers.

51.     Defendants are, without justification, arbitrarily and capriciously offering regulatory protection and endorsement to certain businesses while effectively prohibiting the operation of other businesses, like Plaintiff's.

52.     At no time has Plaintiff's premises ever been associated with or linked to any confirmed case of COVID-19 infection.

53.     Plaintiff has scrupulously followed a thorough-going plan of social distancing, sanitation and disinfection and other precautions designed to prevent the spread of COVID-19, and has been absolutely successful in doing so, insofar as the operation of The Yard is concerned.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the United States Constitution**
**42 U.S.C. § 1983**
**(Equal Protection of the Laws)**

54.     The Plaintiff restates, realleges and incorporates by reference all of the preceding allegations of this Complaint as though fully set forth herein.

55.     Defendants' promulgation and enforcement of the above-referenced executive orders and regulatory guidance intentionally treats axe throwing premises differently from similarly situated businesses including bowling alleys and casinos, which are all authorized to reopen in eligible regions of New York. The activities at these businesses are similar to the activities at Plaintiff's axe throwing premises, and they pose similar or even greater risks of COVID-19 transmission.

56.     Defendants have no rational basis to treat axe throwing premises differently from bowling alleys, casinos and similar establishments.   Defendants have failed to provide any rationale for such distinction.

57.     Defendants' actions in promulgating and enforcing the closure of Plaintiff's axe-throwing premises deprive Plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment.

58.     At all relevant times, Defendants actions were taken under color of law.

59.     Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

60.     Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.

## AS AND FOR A SECOND CAUSE OF ACTION
### Article I, Section 11 of the New York State Constitution
#### (Equal Protection of the Laws)

61.     Plaintiff repeats and realleges each and every allegation above as if it is fully set forth herein.

62.     Defendants' promulgation and enforcement of the above-referenced orders and regulatory guidance intentionally treats axe-throwing premises differently from businesses that conduct similar activities and pose similar or greater risks of COVID-19 transmission.

63.     There is no rational basis to distinguish axe-throwing premises from businesses that pose similar or greater COVID-19 transmission risks.

64.     Defendant's actions in issuing and enforcing the Executive Orders closing Plaintiff's axe throwing premises deprives Plaintiff of the equal protection of the laws guaranteed by Article I, Section 11 of the New York State Constitution.

65.     Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

66.     Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against defendant as follows:

A.     A temporary restraining order and preliminary injunction followed by a permanent injunction, restraining Defendants from issuing or enforcing any orders requiring the closure of Plaintiff's axe throwing premises or prohibiting Plaintiff from offering the sale of alcoholic beverages solely on the basis of the activity of axe throwing being offered on Plaintiff's premises, so long as any similar business, including bowling alleys and casinos, is permitted to operate and offer the sale of alcoholic beverages, and further restraining Defendants from imposing any health or safety requirements on Plaintiff's axe throwing premises that are more restrictive

than the least restrictive requirements imposed on any similar business, including any such requirements imposed on bowling alleys and casinos.

B.     A declaratory judgment that:

(1) Defendants' instant prohibition of the operation of Plaintiff's axe throwing premises, including the sale therein of alcoholic beverages, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and

(2) Defendant's prohibition of the operation of Plaintiff's axe throwing premises denies Plaintiff the equal protection of the laws guaranteed by the Article I, Section 11 of the New York State Constitution.

C.     An award of costs of this litigation, including reasonable attorney's fees under 42 U.S.C. § 1988.

D.     Such other and further relief as this Court may deem just and proper.

Dated:        February 19, 2021

**E. STEWART JONES HACKER MURPHY, LLP**

By: _____

JAMES C. KNOX, ESQ.
Bar Roll No. 517109
JULIE A. NOCIOLO, ESQ.
Bar Roll No. 519914
*Attorneys for Plaintiff*
*Moxie Owl, Inc. d/b/a*
*The Yard: Hatchet House & Bar*
28 Second Street
Troy, NY 12180-3986
Tel. No. 518-274-5820
