UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MOXIE OWL, INC.,** *doing business as* **The Yard Hatchet House & Bar,**

                               **Plaintiff,**

  vs.                                                1:21-cv-194
                                                   (MAD/DJS)

**ANDREW CUOMO,** *in his official capacity as the Governor of the State of New York*; **VINCENT G. BRADLEY,** *in his official capacity as the Chairman of the New York State Liquor Authority*; **LILY M. FAN,** *in her official capacity as the Commissioner of the New York State Liquor Authority*; and **GREELEY T. FORD,** *in his official capacity as the Commissioner of the New York State Liquor Authority*,

                               **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

**E. STEWART JONES HACKER**          **JAMES C. KNOX, ESQ.**
**MURPHY, LLP**                            **JULIE A. NOCIOLO, ESQ.**
28 Second Street
Troy, New York 12180
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**           **ANDREW W. KOSTER, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

    On February 19, 2021, Plaintiff commenced this action seeking redress against Defendants due to the imposition and enforcement of an allegedly unconstitutional prohibition against serving

alcohol at axe-throwing establishments in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 11, of the New York State Constitution.  *See* Dkt. No. 1.  Plaintiff moved by order to show cause for a temporary restraining order and preliminary injunction seeking to enjoin Defendants from enforcing this prohibition during the pendency of this action.  *See* Dkt. No. 3.  On February 20, 2021, the Court issued a text order temporarily denying Plaintiff's motion due to its failure to comply with the Local Rules.  *See* Dkt. No. 5.  Later that day, Plaintiff renewed its motion for a temporary restraining order and preliminary injunctive relief, this time in compliance with the Local Rules.  *See* Dkt. No. 6.

On February 22, 2021, the Court denied Plaintiff's renewed motion for a temporary restraining order, but ordered that the motion for a preliminary injunction would be heard on an expedited basis.  *See* Dkt. No. 8.  Plaintiff's motion for a preliminary injunction is now fully briefed.  As set forth below, Plaintiff's motion is denied.

## II. BACKGROUND

**A.     The COVID-19 Pandemic and the State's Response**

On March 7, 2020, pursuant to New York Executive Law § 29-a, Governor Cuomo issued Executive Order 202, implementing the State Comprehensive Emergency Management Plan and declaring a statewide disaster emergency in response to the COVID-19 pandemic.  *See* Dkt. No. 14-1 at ¶ 14. Following the issuance of Executive Order 202, Governor Cuomo issued additional Executive Orders, continuing the temporary restrictions responding to the state of emergency.  *See id.* at ¶ 20.  These Executive Orders included closing schools and businesses and limiting gatherings.  *See id.*  Among other actions taken by Governor Cuomo as part of this "New York on

PAUSE" initiative, restrictions were placed on the operations of non-essential businesses. *See id.* at ¶ 24.

Over the course of May and June 2020, as the results of the statewide restrictions began taking effect, and the State's infection and death rates began to stabilize and then decline, New York transitioned from the "New York on PAUSE" initiative to the "New York Forward" initiative: a phased plan to guide the reopening of non-essential businesses. *See id.* at ¶ 31. The New York Forward initiative was intended to begin reopening New York's economy in a gradual and measured way that would prevent new spikes in COVID-19 cases. *See id.* at ¶¶ 31-45. In May 2020, as part of the phased reopening of the State, Governor Cuomo began to incrementally relax restrictions on outdoor and indoor gatherings. *See id.* Those restrictions continued to be relaxed in June, as infection rates in parts of the State reached lower levels. *See id.*

Thereafter, a resurgence of the COVID-19 pandemic swept through the United States over the winter, this time with new variants of the virus. *See id.* at ¶ 58. The United States reported the highest seven-day moving average of new COVID-19 cases with the highest number of new cases reported in a single day on January 8, 2021 – 315,179. *See id.* This resurgence led New York hospitals to begin operating in crisis management mode on December 16, 2020, when the daily positivity rate increased from 0.8% in September to 7.5% in December. *See id.* at ¶¶ 55, 59. As a result, the lower infection rates and absence of variants that permitted the gradual opening of business from June through October started drastically trending upward, requiring further caution in determining when additional business could safely reopen.

While the infection rates remained level through most of January 2021, they began trending downward thereafter. *See* Dkt. No. 14-1 at ¶ 60. In anticipation of a continued downward trend, New York has begun scheduling dates in March of the reopening of more

businesses. Indoor sports and recreation activities, including games like axe throwing that are offered by businesses that offer food and drink, were permitted to resume service on March 5, 2021. *See id.* at ¶¶ 67-71.

**B.    Plaintiff and the Instant Lawsuit**

Plaintiff is a bar-restaurant in Albany, New York that also provides its patrons a venue for the sport of axe throwing. Plaintiff is licensed and permitted to serve both alcoholic beverages and food. *See* Dkt. No. 1 at ¶ 5. On February 12, 2021, a New York State Liquor Authority investigator informed Plaintiff that, pursuant to Governor Cuomo's Executive Orders, it was prohibited from simultaneously serving food and drink and allowing bar games such as axe throwing. *See id.* at ¶ 32. Plaintiff was told that it would face fines and a suspension of its liquor license unless it ceased axe throwing activities. *See id.* at ¶ 33. Plaintiff ceased the axe throwing portion of the business but continued to serve food and alcoholic beverages. *See* Dkt. No. 6-2 at ¶ 34.

**C.    Guidance Governing New York Restaurants/Bars and Axe Throwing**

On February 22, 2021, Governor Cuomo announced updated guidance for sports and recreation activities during the COVID-19 pandemic. *See* Dkt. No. 14-1 at ¶ 67. This guidance specifies that "pool and billiard halls, and establishments that provide both recreational activities (e.g., darts, toss/bowl/shuffle games, racket games, axe throwing, etc.) and food and beverage service for patrons" can resume service on March 5, 2021, subject to applicable public safety measures. *See id.*; *see also* Dkt. No. 14-23 at 8. These venues with recreational activities can open with, among other restrictions, a 50% capacity restriction, similar to the capacity limits that already exist for casinos and movie theaters. *See id.* at ¶ 68.

### III. DISCUSSION

A.   **Standard of Review**

"When 'a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (quoting *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016)). Generally, courts treat the first two factors as "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Moreover, the Supreme Court has held that "a plaintiff seeking a preliminary injunction must demonstrate not just that [it has] some likelihood of success on the merits and will suffer irreparable harm absent an injunction, but also that the 'balance of the equities tips in [its] favor and an injunction is in the public interest.'" *Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Svcs.*, 769 F.3d 105, 112 n.4 (2d Cir. 2014) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "These factors merge when the Government is the opposing party." *Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

B.   **Likelihood of Success on the Merits**

It is well settled that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts. *See Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905).[1] This century-old principle has been repeatedly

---

[1] Some courts have held that the Supreme Court in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), abrogated *Jacobson*'s relevance in all constitutional cases arising from a pandemic. *See, e.g.*, *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 470-71 (5th Cir. 2021) (Willet, J., concurring) (arguing *Jacobson* has been displaced); *Plaza Motors of*

(continued...)

5

reaffirmed this past year by a host of judicial voices, particularly in the context of constitutional challenges warranting rational basis review.  *See, e.g.*, *Hopkins Hawley, LLC*, 2021 WL 465437, at *4-5 (citations omitted).  The police power, however, is not absolute.

Because this case involves a challenge to state action that neither burdens a suspect class nor impinges on a fundamental right, the challenged executive order is subject to rational basis review.  *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).[2]  Utilizing this framework, the Court presumes that the executive action is constitutional, making it incumbent upon the plaintiff to negate "every conceivable basis which might support" it.  *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).  That is no easy task, as the plaintiff must disprove all possible justifications for the executive action regardless of whether those justifications actually motivated the underlying decisionmaking.  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-15 (1993) ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.  Thus, the absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis") (citations omitted).  Under this test, executive action "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Id.* at 315.

---

[1](...continued)
*Brooklyn, Inc. v. Cuomo*, No. 20-cv-4851, 2021 WL 222121, *5 (E.D.N.Y. Jan. 22, 2021) (concluding *Jacobson* has been abrogated).  Other courts, however, have found that *Jacobson* is still good law, particularly in the context of challenges that do not warrant a deferential standard of review.  *See Hopkins Hawley, LLC v. Cuomo*, ___ F. Supp. 3d ___, 2021 WL 465437, *5 (S.D.N.Y. 2021) (addressing the continuing viability of *Jacobson* in cases involving a deferential standard of review).

[2] In its memorandum of law, Plaintiff appears to agree that rational basis review applies to this action.  *See* Dkt. No. 6-3 at 10-11.

6

To prevail on its Equal Protection claim as a class-of-one, Plaintiff must show (1) it has been intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2001).[3] When the class-of-one claim does not allege malice as the basis for the differential treatment, the claim requires the "level of similarity between plaintiffs and the persons with whom they compare themselves ... be extremely high." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal citations omitted).

### 1. Similarly Situated

"In the Second Circuit, a class-of-one plaintiff 'must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 268 (N.D.N.Y. 2016) (quoting *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (other citation omitted); *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).  This stringent standard exists because the similarity is offered to support "'an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose — whether personal or otherwise — is all but certain.'" *Id.* (quoting *Clubside*, 468 F.3d at

---

[3] In its complaint, Plaintiff asserts that Defendants' actions deprived it of the equal protection of the laws guaranteed by both the Fourteenth Amendment to the United States Constitution and Article I, Section 11 of the New York State Constitution.  *See* Dkt. No. 1 at ¶¶ 54-66.  Plaintiff's state equal protection claim under Article I, Section 11 mirrors its federal equal protection claim brought under 42 U.S.C. § 1983.  *See id.*  The same analysis applies to each of these claims because the same factual allegations support each cause of action and the reach of Article I, Section 11 of the New York State Constitution is co-extensive with its federal equivalent.  *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 754-55 (2d Cir. 2003) (citations omitted); *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 998 F. Supp. 340, 351 (E.D.N.Y. 1998) (citations omitted).

7

159).  "Accordingly, the plaintiff and the comparator must be '*prima facie* identical in all relevant respects.'"  *Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)).

In the present matter, the Court finds that Plaintiff has failed to set forth any comparators with an "extremely high degree of similarity" to itself.  The Second Circuit has made clear that, to support a class-of-one Equal Protection claim, the plaintiff and the comparator must be sufficiently similar "that no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy[.]" *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks omitted).  Plaintiff alleges that it is materially identical to gambling and bowling establishments.  Plaintiff's complaint and motion for injunctive relief, however, make clear that Plaintiff functions more like a restaurant than gambling or bowling establishments.  Plaintiff has a reception desk at its entrance, an indoor lawn space, a bar, and a kitchen prep area, among other rooms.  *See* Dkt. No. 1-1 at 5.  Plaintiff offers food and alcohol, *see id.*, and even offered takeout food service during the pandemic.  *See* Dkt. No. 6-2 at ¶ 7.  Plaintiff has table service and bar seating, and an outdoor patio with additional seating.  *See* Dkt. No. 1-1 at 5.  Moreover, Plaintiff makes clear that axe throwing was just one reason among many why patrons visit the business.  In addition to the food and drink, patrons "who have reserved time in the yard [would] be able to select a yard game to play during their one hour reserved time period."  *Id.*  Plaintiff offers yard games such as "Viking chess," "a pin bowling game," bocce, lawn darts, cornhole, washers, ladder ball, and Twister.  *See id.*  Axe throwing is also offered by reservation, with four cages available for that activity.  *See* Dkt. No. 1 at ¶ 18.

Plaintiff offers only conclusory assertions in support of its argument that it is similarly situated to bowling and gambling establishments. While such establishments undoubtedly offer some of the eclectic activities Plaintiff offers, Plaintiff would undoubtedly be hard pressed to find a casino offering such physically challenging activities alongside the more traditional games such as blackjack or roulette.

Additionally, the record makes clear that, while the games Plaintiff offers to its patrons are undoubtedly an important revenue source for its business, it still primarily operates as a restaurant/bar. This conclusion is supported by the fact that Plaintiff continued to offer takeout food service during the pandemic. *See* Dkt. No. 6-2 at ¶ 7.

Accordingly, the Court finds that Plaintiff has failed to set forth a sufficiently similar comparator that would support a finding that it is likely to succeed on the merits of its class-of-one Equal Protection claim.

*2. Rational Basis*

Moreover, the Court finds that, even assuming that Plaintiff had set forth a sufficiently similar comparator, the claim is still not likely to succeed because Plaintiff has failed to negate all possible justifications for the executive action. *See Beach Commc'ns, Inc.*, 508 U.S. at 313-15. In its reply in further support of its motion for a preliminary injunction, Plaintiff contends that Defendants "fail to connect its rational basis in issuing and enforcing the executive orders *to* the difference in treatment between axe throwing and similarly situated establishments like bowling alleys and casinos." Dkt. No. 15 at 4 (emphasis in original). However, as noted above, when a challenged action is subject to rational basis review, the decisionmaker is not required "to articulate its reasons" and the executive action in question "is not subject to courtroom fact-

finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315.

In its complaint and motion for injunctive relief, Plaintiff makes clear that food and alcohol service comprise a significant portion of its business, with many customers patronizing its business without taking advantage of other activities offered. While bowling alleys often offer food and alcohol, in this Court's limited experience, patrons who go to bowling alleys do so primarily for the purpose of bowling. While many bowling alleys undoubtedly offer take-out food service, this service likely only comprises an insignificant portion of their businesses. This rational speculation as to why bowling alleys were treated differently than axe-throwing venues makes clear that this claim is unlikely to succeed on the merits. *See Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 469-70 (5th Cir. 2021) (finding that the plaintiff was unlikely to succeed on the merits of its equal protection claim challenging executive order that prohibited one-site consumption of alcohol and food at "bars" but permitted on-site consumption of alcohol and food at "restaurants"); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 Fed. Appx. 125, 128 (6th Cir. 2020) (holding that Michigan governor's "rational speculation" that the COVID-19 risks associated with gyms based on their environment, the proximity of its patrons, and the primary exercise activities involved was sufficient to justify closing indoor gyms while permitting other indoor facilities to remain open) (quoting *Beach Commc'ns*, 508 U.S. at 315, 113 S. Ct. 2096).

Accordingly, the Court finds that Plaintiff's motion must be denied on this alternative ground.

**C.     Balance of Equities/Public Interest**

Even assuming that Plaintiff had demonstrated that it was likely to succeed on the merits of its class-of-one Equal Protection claim, the balance of equities and public interest strongly favor denying the motion for injunctive relief.  As noted above, on February 22, 2021, Governor Cuomo announced updated guidance for sports and recreation activities during the COVID-19 pandemic.  *See* Dkt. No. 14-1 at ¶ 67.  This guidance specifies that "pool and billiard halls, and establishments that provide both recreational activities (e.g., darts, toss/bowl/shuffle games, racket games, axe throwing, etc.) and food and beverage service for patrons" can resume service on March 5, 2021, subject to applicable public safety measures.  *See id.*; *see also* Dkt. No. 14-23 at 8.  These venues with recreational activities can open with, among other restrictions, a 50% capacity limitation, similar to the capacity limits that already exist for casinos and movie theaters.  *See id.* at ¶ 68.  As noted, this guidance specifically references axe throwing within the definition of "recreational activities" that are permitted under the new guidance.  *Id.*

While the Court does not believe that the new guidance moots this case, the fact that Plaintiff can now engage in the activities that are the subject of its motion for injunctive relief weighs strongly against the need for a preliminary injunction.  *See Cassell v. Snyders*, ___ F.3d ___, 2021 WL 852227, *4 (7th Cir. 2021) (finding that the case was not moot even though the executive order at issue was no longer in effect but nevertheless holding that this development "weigh[ed] against the need for a preliminary injunction even if the plaintiffs may be likely to succeed on the merits").

As the Seventh Circuit recently noted,

> the scientific uncertainty surrounding the pandemic further cautions against enjoining state coronavirus responses unless absolutely necessary.  The world has not suffered a pandemic this deadly since 1918. ... Governments and citizens have thus been forced to act with imperfect knowledge.  It has been difficult to quantify the risks of

11

> infection posed by different public activities like worshiping or shopping, how the virus affects different subpopulations, whether hospitals might run out of beds, and to estimate when "herd immunity" might be achieved through vaccination – to just list some examples.

*Cassell v. Snyders*, ___ F.3d ___, 2021 WL 852227, *6 (7th Cir. 2021) (internal quotation omitted).

Since November 2020, COVID-19 vaccines have been approved and are being distributed. As of March 17, 2021, more than 7 million total COVID-19 vaccine doses have been administered in New York. *See COVID-19 Updates*, available at https://www.governor.ny.gov/ (last visited Mar. 17, 2021). With decreasing daily infections and increasing portions of the population being inoculated, it is becoming increasingly less likely that Plaintiff will face more restrictive conditions on its business in the near future. This, along with the fact that the challenged Executive Order is no longer in effect, weigh strongly against granting the requested relief.

"Cases like this lie within a fraught and evolving intersection of law, science, policy, and politics." *Cassell*, 2021 WL 852227, at *5. The risk of irreparable injury to Plaintiff is very low and dropping, even if the Court were to assume that Plaintiff is likely to succeed its Equal Protection claim. As such, the Court finds that the balance of equities and public interest weigh strongly against granting injunctive relief.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction (Dkt. No. 6) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 18, 2021
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge